IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Lucian Oprea,　　　　　　　　　)
　　　　Petitioner,　　　　　　)
　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　)　　　　1:10cv920 (TSE/JFA)
　　　　　　　　　　　　　　　　)
Gene M. Johnson,　　　　　　　)
　　　　Respondent.　　　　　　)

MEMORANDUM OPINION

　　　　Lucian Oprea, a Virginia inmate proceeding pro se, has filed a petition for a writ of

habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his convictions

in the Circuit Court of Arlington County, Virginia of money laundering, credit card theft,

identity theft, and possession of burglarious tools.  Respondent filed a Motion to Dismiss and

Rule 5 Answer, with a supporting brief and numerous exhibits.[1]　Oprea was given the

opportunity to file responsive materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir.

1975), and he filed a reply. Oprea has also filed a Motion for Investigation of Obstruction of

Justice and Motion for Appointment of Counsel.  For the reasons that follow, Oprea's claims

must be dismissed, his Motion for Investigation of Obstruction of Justice must be denied, and the

Motion for Appointment of Counsel must be denied as moot.

**I. Background**

　　　　On July 3, 2007, Detective Jerome Lee of the Arlington County Police Department saw

Oprea standing in a hallway outside the door to apartment 4211 at 1301 S. Joyce Street in

Arlington County.  See Cir. Ct. Tr., May 8, 2008, at 7, ECF No. 14-1.  Detective Lee also works

---

[1] Respondent filed two Motions to Dismiss because his initial Motion to Dismiss did not include
a Roseboro notice.  Accordingly, the first Motion to Dismiss (Docket # 9) must be denied as
duplicative.

security for the complex, and he asked Oprea what he was doing. Oprea said he was waiting for his wife who lived in the apartment, but Detective Lee knew the apartment was occupied by a man who lived alone. Detective Lee identified himself as a police officer, and Oprea walked away. Id.

Lee noticed an I.D. badge hanging out of Oprea's shirt pocket as he followed Oprea across the parking lot. Lee watched Oprea go into the men's restroom at Nordstrom, and saw that the I.D. badge was gone when Oprea came out of the restroom about ten seconds later. Id. at 8. Lee stopped Oprea across the street and took him back to the Nordstrom restroom, where Lee found a badge hidden in a seat cover dispenser bearing the name 'Julio Rodriguez' with Oprea's photograph. Lee asked Oprea his name, and he replied "Lucian Oprea." Oprea denied knowledge of the badge. Lee arrested Oprea for trespassing. Id.

In the search incident to the arrest, Lee found keys to a Mercedes in Oprea's pocket, as well as an imitation U.S. Postal Service mailbox key. The car key fit a Mercedes with Pennsylvania tags that was registered to Dashdalum Myagmar and parked at a lot at Pentagon Row. Police later confirmed that Ms. Myagmar is Oprea's wife who lives with him in Arlington. The same day, police obtained and executed a search warrant on the car. The police recovered slips of paper on which many people's names, Social Security numbers, dates of birth, and other identifying information had been written, as well as "latex gloves, lock picks, devices designed to open locked car doors, many keys, $1600 in cash, a laptop computer, and various CDs, thumb drives and other computer paraphernalia." Id. at 9. Additionally, police found gift cards, prepaid debit cards, and credit cards in various names (including J. Rodriguez). Id. at 10.

The police executed a search warrant at Oprea's home two days later, and his wife granted permission to search her Mitsubishi that was parked near the condo. From those two

locations, police recovered "a bag full of mailbox locks, a TASER, a plastic handgun, credit cards and other documents in other people's names, more lock picking tools, a mag card reader, two covert surveillance cameras, $2,000 in cash, a man's wig, a Rolex watch, Garmin two-way radios, and a Garmin map CD, materials from a hacker's convention, several computers, at least 20 boxes of unopened computer equipment, and a key to a safe deposit box." Id. When detectives executed the search warrant they had obtained on the safe deposit box, which was at a Bank of America branch in Loudon County, Virginia, they found $15,000 in U.S. currency and Euro notes with a face value of $1400. Id. at 11.

Records obtained from banks and credit card companies during the course of the investigation revealed that $15,864 in charges were made to a CHASE Visa account connected to a credit card in the name of Suwane Holmes that was found in the Mercedes. Those charges included the purchase of the Garmin two-way radios and Garmin map CD from Hudson Trail Outfitters at Pentagon Row that had been found at Oprea's residence. Ms. Holmes lived at Pentagon Row in 2003 and 2004, but did not know Oprea, never gave him permission to use her name, and did not know that this account had been opened. Id. at 12.

Investigators also learned that an American Express account was opened over the internet in 2007 in the names of Julio Rodriguez and Jennifer Rodriguez. The address provided for the account was 1401 S. Joyce Street in Arlington, but it was later changed to 1301 S. Joyce Street. The card found in the Mercedes bearing the name "J. Rodriguez" had been issued to Jennifer Rodriguez. $16,131.98 of charges had been made to this card, including the purchase of a man's wig. Id. at 13. A man by the name of Julio Rodriguez had previously lived at 1401 S. Joyce Street, but his daughter Jennifer had never lived there. Neither Julio Rodriguez nor Jennifer Rodriguez knew Oprea, gave him permission to use their names, or knew that credit cards had

3

been opened in their names. Upon learning of the American Express account from the Arlington police, Mr. Rodriguez ran a check of his credit and learned that a Capitol One MasterCard account was opened in his name in April 2007, which had $31,879.89 in charges, including the purchase of a Rolex watch with the same serial number as the watch the police found in Oprea's condo. Id. When Mr. Rodriguez reviewed his credit union account statement, he saw an electronic funds transfer of $4500 from his credit union account to the Capitol One account. He was able to stop the transfer.

The Capitol One card had also been used to purchase a prepaid Green Dot MasterCard in the name of Lew Mo, with a given address of 900 Army-Navy Drive. Officers found documents related to this Green Dot card in the Mercedes. An Army captain named Lo Mew lived in the area but not at that specific address, and she did not know Oprea, never gave him permission to use her name, and did not know that this account had been opened. Id. Others whose cards had been found in the Mercedes informed officers that they did not know Oprea, never gave him permission to use their names, and did not know the accounts had been opened. Id. at 14-15.

During an interview with the FBI on June 22, 2007 about another matter, Oprea stated that he "primarily relied upon white collar fraud, identity theft, bank fraud and ATM fraud for income." Id. at 15. Oprea's interview is summarized as follows:

> He said he obtains information from hacker software for passwords to bank and credit card accounts. He uses this software on public computers and sets up cameras on ATMs with an external device that records the magnetic strip of the card. He then duplicates the recordings on blank plastic cards and uses the ATMs recorded from the camera. The defendant told the agent that he makes $50,000 to $100,000 annually from this fraud. He withdraws the maximum amount allowed from each account. He estimated that he had used the I.D.'s of 100 people which he throws away after using them."

Id. at 15-16.

On May 8, 2008, Oprea was convicted pursuant to a guilty plea in the Circuit Court for the County of Arlington, Virginia of five counts of credit card theft, three counts of identity theft, possession of burglarious tools, and money laundering. Commonwealth v. Oprea, Case Nos. CR07001126-00, CR07001127-00, CR07001128-00, CR07001129-00, CR07001130-00, CR07001502-00, CR07001503-00, CR07001504-00, CR07001505-00, CR07001506-00. The court sentenced him to fifteen years with seven years suspended for each of the counts of credit card theft, five years of incarceration for each count of identity theft, eight years of incarceration for possession of burglarious tools, and twenty years of incarceration with twelve years suspended for money laundering. Each of these sentences was ordered to run concurrently, leaving Oprea with an active sentence of eight years of incarceration. Oprea did not pursue a direct appeal.

Oprea filed a petition for writ of habeas corpus in the Supreme Court of Virginia, arguing that (1) counsel was ineffective at the motion to suppress by arguing under the wrong statute, (2) counsel was ineffective for failing to introduce evidence favorable to Oprea, (3) counsel was ineffective for failing to object to the Commonwealth's use of perjured testimony, (4) counsel was ineffective for failing to move to dismiss five indictments that were the result of vindictive prosecution, (5) vindictive prosecution, and (6) the evidence used to support the indictments was obtained in violation of the Fourth Amendment.[2] The court dismissed the petition on July 21, 2010 and refused the petition for rehearing on September 22, 2010. Oprea v. Dir., Dep't of Corr., Case No. 092443.

---

[2] Claims (5) and (6) were raised as amended claims.

On August 6, 2010, Oprea filed the instant federal habeas petition,[3] raising the following claims:

(1) He received ineffective assistance of counsel when his attorney (a) failed to argue the proper statute to support the motion to suppress, (b) failed to introduce evidence favorable to Oprea, and (c) failed to object to the Commonwealth's use of perjured testimony.

(2) He received ineffective assistance relating to his claims of vindictive prosecution.

(3) He was subjected to vindictive prosecution.

(4) The indictments were unconstitutional.

Based on the pleadings and record before this Court, it is uncontested that Oprea exhausted all of his claims as required under 28 U.S.C. § 2254. Accordingly, this matter is now ripe for review on the merits.

## II. Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas petition, a federal court may not grant the petition based on the claim unless the state court's adjudications are contrary to, or an unreasonable application of, clearly established federal law, or are based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based on an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination runs afoul of the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially

_____

[3] For purposes of calculating the statute of limitations, a petition is deemed filed when the prisoner delivers his pleading to prison officials. Lewis v. City of Richmond Police Dep't, 947 F.2d 733 (4th Cir. 1991); see also Houston v. Lack, 487 U.S. 266 (1988). In the petition, Oprea states that he placed the petition in the prison mailing system on August 6, 2010.

indistinguishable facts." Id, at 413. Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Importantly, this standard of reasonableness is an objective one. Id. at 410. Moreover, in evaluating whether a state court's determination of the facts is unreasonable, a federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. 2254(e)(1)); see, e.g., Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006).

## III. Analysis

### A. Ineffective Assistance

Oprea argues (1) counsel provided ineffective assistance of counsel by failing (1)(a) to argue the proper statute to support the motion to suppress, (b) to introduce evidence favorable to Oprea, and (c) to object to the Commonwealth's use of perjured testimony, and (2) to object to vindictive prosecution. The Supreme Court of Virginia rejected these claims on the merits. In reviewing the state court's decisions as to Oprea's ineffective assistance claims, Oprea fails to show that the results were either contrary to, or an unreasonable application of, clearly established federal law, or an unreasonable determination of the facts.

To establish ineffective assistance of counsel, a petitioner must show that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defendant." Strickland v. Washington, 466 U.S. 668, 687 (1984). To prevail, a petitioner "must show both deficient performance and prejudice." Spencer, 18 F.3d at 233. Therefore, a court need not

review the reasonableness of counsel's performance if a petitioner fails to show prejudice. Quesinberry v. Taylore, 162 F.3d 273, 278 (4th Cir. 1998).

The two-part Strickland test also "applies to challenges to guilty pleas based on ineffective assistance of counsel." Hill v. Lockhart, 474 U.S. 52, 58 (1985). In the context of a guilty plea, the "performance" prong of the Strickland test 'is nothing more than a restatement of the standard of attorney competence already set forth in . . . McMann v. Richardson,' 397 U.S. 759, 771 (1970), that is, whether the advice of counsel "was within the range of competence demanded of attorneys in criminal cases." Id. at 58-59. With regard to the "prejudice" prong in the context of a guilty plea, a petitioner must show that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; see also Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000).

In reviewing a petitioner's claim of ineffective assistance of counsel regarding a guilty plea, "the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Declarations made "in open court carry a strong presumption of veracity," and "the subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Id. at 74. Thus, absent clear and convincing evidence to the contrary, a defendant is bound by his representations at a plea colloquy concerning the voluntariness of the plea and the adequacy of his representation. Beck v. Angelone, 261 F.3d 377, 396 (4th Cir. 2001).

The Supreme Court of Virginia rejected Oprea's claims of ineffective assistance because Oprea had "failed to offer a valid reason why he should not be bound by his representation at

trial that his counsel's performance was adequate." See Va. Sup. Ct., July 20, 2010, at 2-3, ECF No. 1-12 (citing Anderson v. Warden, 281 S.E.2d 885, 888 (Va. 1981)). This holding was not contrary to federal law because the Supreme Court did not reach a decision "opposite to that reached by [the United States Supreme] Court on a question of law," nor did it decide the issue "differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. This holding is also consistent with the U.S. Supreme Court's reasoning in Blackledge, as well as the Fourth Circuit decision in Beck. Therefore, the Supreme Court of Virginia's holding regarding Oprea's ineffective assistance claims was not contrary to federal law.

Moreover, the Supreme Court of Virginia's rejection of Oprea's ineffective assistance claims was a reasonable application of federal law and a reasonable determination of the facts. The trial court found that Oprea entered the guilty pleas "freely and voluntarily with an understanding of the nature of their consequences." See Cir. Ct. Tr., May 8, 2008, at 7, ECF No. 14-1. Oprea argues that his plea was not voluntary and intelligent because he was not familiar with the Strickland standard at the time that he entered the plea. See Brief in Opp'n at 1-2, ECF No. 18. Specifically, Oprea argues that "[p]rior to the petitioner learning in the prison law library about Strickland v. Washington and about vindictive prosecution, he had no clue about what his attorneys duties were and how he failed them." Id. Before accepting the guilty plea, however, the trial court asked Oprea whether he understood what the Commonwealth had to prove to convict him, whether he was pleading guilty because he was in fact guilty of the crimes alleged, whether he understood the potential sentences for each of the charges, and whether he understood the rights he was waiving by entering a guilty plea.[4] See Cir. Ct. Tr., May 8, 2008, at

---

[4] Notably, Oprea stated at trial that he had obtained a law degree in Romania. See Cir. Ct. Tr., May 8, 2008, at 4, ECF No. 14-1.

4-7, ECF No. 14-1. Oprea also acknowledged that he had discussed the written plea agreement "thoroughly" with his attorney. Id. at 6. Given these answers, his present argument does not contain clear and convincing evidence to rebut the presumption that the trial court's factual findings with respect to the voluntary and intelligent character of his guilty plea were sound. See Miller-El, 545 U.S. at 240; see also Beck, 261 F.3d at 396. Therefore, claims (1)(a)-(c) and (2), in which Oprea argues he received ineffective assistance, must be dismissed.[5]

## B. Vindictive Prosecution and Unconstitutional Indictments

In claim (3), Oprea argues that he was subjected to vindictive prosecution and in claim (4), Oprea argues that the indictments were unconstitutional and should have been dismissed. The Supreme Court of Virginia held that these claims were barred because "a voluntary and intelligent guilty plea waives all non-jurisdictional defenses antecedent to the guilty plea." See Sup. Ct., July 20, 2010, at 3, ECF No. 1-12 (citing Peyton v. King, 169 S.E.2d 569, 571 (Va. 1969)). In reviewing the Supreme Court of Virginia's decisions as to these claims, Oprea fails to show that the results were either contrary to, or an unreasonable application of, clearly established federal law, or an unreasonable determination of the facts.

The Supreme Court of Virginia based its decisions on Virginia state law from the Peyton case. Nevertheless, its decisions were not "contrary to" federal law because the Peyton rule is in line with the rule from Tollett v. Henderson, 411 U.S. 258, 266-67 (1973), which states that a criminal defendant who enters a guilty plea "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea" except claims of ineffective assistance that attack the voluntary and intelligent character of the guilty plea. See Williams, 529 U.S. at 413.

---

[5] It is worth noting that Oprea's motion to suppress was denied by the trial court, but Oprea's motion to reconsider was granted. Oprea entered his guilty plea prior to the next hearing on the suppression motion. See Cir. Ct. Tr., May 8, 2008, at 4, ECF No. 14-1.

Moreover, the Supreme Court of Virginia reasonably applied the principle from Peyton to the facts of Oprea's case. As explained above, the trial court found that Oprea entered the guilty pleas "freely and voluntarily with an understanding of the nature of their consequences" and Oprea has not rebutted these factual findings with clear and convincing evidence. See Cir. Ct. Tr., May 8, 2008, at 7, ECF No. 14-1. Oprea has thus failed to show that the Supreme Court of Virginia's decisions as to these claims were either contrary to, or an unreasonable application of, clearly established federal law, or an unreasonable determination of the facts, and claims (3) and (4) must therefore be dismissed.

### IV. Motion for Investigation of Obstruction of Justice

In the Motion for Investigation of Obstruction of Justice, Oprea alleges that "the detectives working the case stole over $35,000 in cash and goods belonging to the petitioner and the victims of the case" and asks the court to "order an investigation of these larcenies." See Mot. for Invest. at 1, ECF No. 21. Because these allegations are irrelevant to the issues involved in this § 2254 habeas petition, this motion must be denied without prejudice to Oprea's ability to file a civil rights complaint pursuant to 42 U.S.C. § 1983.

### V. Conclusion

For the above stated reasons, this petition must be dismissed, petitioner's Motion for Investigation of Obstruction of Justice must be denied, and petitioner's Motion for Appointment of Counsel must be denied as moot. An appropriate Order shall issue.

Entered this ___17th___ day of _____June_____ 2011.

_____
T. S. Ellis, III
United States District Judge

Alexandria, Virginia